IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | No. 10-29 |
| KENNETH SCHNEIDER | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                        **February 15, 2013**

On August 20, 2012, Defendant Kenneth Schneider filed a motion for new trial based on newly discovered evidence. He claims he discovered the Government gave cash payments to Roman Zavarov for his testimony, Zavarov admitted to committing perjury, and other contradictions in Zavarov's testimony. For the following reasons, this Court will deny Schneider's motion for a new trial without an evidentiary hearing.

**FACTS**

On October 1, 2010, Schneider was convicted by a jury of traveling in foreign commerce with the intent to engage in sex with a minor between the ages of 12 and 16, in violation of 18 U.S.C. § 2423(b) (Count I), and transporting a person in foreign commerce with the intent that such person engage in criminal sexual conduct, in violation of 18 U.S.C. § 2421 (Count II). The charges involved Schneider's travel from the United States to Russia with Roman Zavarov, who at the time was 15-years old. This Court granted judgment of acquittal on Count II and upheld the conviction on Count I. On December 1, 2011, the Court imposed a sentence of 15 years imprisonment. Schneider filed an appeal of his conviction and sentence to the Third Circuit Court of Appeals on January 17, 2012, which is still pending.

On August 12, 2008, Zavarov instituted a civil suit against Schneider and members of his family. *John Doe v. Schneider, et al.*, No. 2:08-CV-3805 (E.D. Pa. Aug. 12, 2008). The case was stayed pending the resolution of the criminal trial and has since resumed. Schneider claims during discovery in that case he became aware of evidence which entitles him to a new criminal trial.

On August 20, 2012, Schneider filed a motion for new trial based on newly discovered evidence pursuant to Federal Rule of Criminal Procedure 33(b)(1) and the Due Process Clause of the Fifth Amendment, claiming he discovered the Government gave cash payments to Zavarov for his testimony, Zavarov admitted to committing perjury, and other contradictions in Zavarov's testimony at trial and at sentencing.

**DICUSSION**

Federal Rule of Criminal Procedure 33(a) provides, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A defendant may file a motion for a new trial grounded on newly discovered evidence "within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case." Fed. R. Crim. P. 33(b)(1). It is within the discretion of the trial court to grant or deny a motion pursuant to Rule 33. *United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006) (citing *Gov't of V.I. v. Lima*, 774 F.2d 1245, 1250 (3d Cir. 1985)).

A defendant requesting a new trial based on newly discovered evidence must satisfy the following requirements:

> (a) the evidence must be in fact, newly discovered, i.e., discovered since the trial;
> (b) facts must be alleged from which the court may infer diligence on the part of the [defendant]; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such,

> and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Kelly*, 539 F.3d 172, 181-82 (3d Cir. 2008) (quoting *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d. Cir. 1976)). This test is commonly referred to as the "*Berry*" test. *See United States v. Leary*, 378 F. Supp. 2d 482, 487 (D. Del. 2005) (noting the test originated in *Berry v. State,* 10 Ga. 511 (Ga. 1851)). "If just one of the requirements is not satisfied, a defendant's Rule 33 motion must fail." *Kelly*, 539 F.3d at 182 (citing *United States v. Jasin,* 280 F.3d 355, 365 (3d Cir. 2002)). "The movant has the 'heavy burden' in meeting these requirements." *United States v. Saada*, 212 F.3d 210, 216 (3d Cir. 2000) (citation omitted).

Preliminarily, the Court finds Schneider's motion is timely. Schneider also satisfies the first and second requirements of the *Berry* test. Schneider demonstrates he became aware of the newly discovered evidence during discovery in the civil trial, and this Court infers Schneider's diligence. The remaining *Berry* requirements are disputed.

Schneider's first alleged newly discovered evidence is the cash payments given to Zavarov by the Government. Zavarov testified during a civil deposition he was paid between $500 and $1,000 in cash by Assistant United States Attorney Morgan on more than one occasion for or on account of his testimony. Schneider claims this was not disclosed to defense counsel at or before trial, thus the payments violate *Brady v. Maryland*, 373 U.S. 83 (1963). Schneider argues if the jury had heard this evidence, it would have changed its verdict. The Government contends the payments were simply standard witness vouchers and were disclosed to Schneider's' criminal defense counsel, and thus do not constitute a *Brady* violation.

A *Brady* violation occurs when the prosecution fails to provide favorable evidence to the accused "where the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Accordingly, there are three elements of

a *Brady* violation: (1) the evidence is favorable to the accused because it is exculpatory or impeaching; (2) the evidence must have been suppressed, either willfully or inadvertently; and (3) the defendant was prejudice as a result. *United States v. Weingold*, 69 F. App'x 575, 577 (3d Cir. 2003) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). "When the newly discovered evidence is allegedly suppressed in violation of *Brady v. Maryland*, however, courts typically apply the well-established standard requiring that the evidence must create a 'reasonable probability' of a different outcome, a somewhat easier burden for defendant to shoulder." *Brookins v. United States*, No. 12-12, 2013 WL 364231, at *3 (W.D. Pa. Jan. 30, 2013) (citing *United States v. Pelullo,* 399 F.3d 197, 209 (3d Cir. 2005)).

Schneider cites to the following portion of Zavarov's civil deposition testimony regarding the witness vouchers:

> Q. Okay. Did you ever get witness vouchers from the government for testifying?
> A. What is [sic] witness vouchers?
> Q. I'm asking you. Do you know what they are?
> A. I was paid for testifying.
> Q. How did you get paid?
> A. Michelle, Mrs. Morgan went with me to the place to withdraw money.
> Q. How much did you get?
> A. I'm sorry. I don't remember the amount.

Def. Br. Ex. A, Zavarov's Dep. 279. The questioning continues in an attempt to establish the amount of money Zavarov received from the Government.

This Court finds Schneider's argument as to the witness vouchers baseless. First, Schneider misconstrues the deposition testimony. Zavarov did not fully understand what the witness vouchers were, and Schneider attempts to use Zavarov's misstatement to his advantage. Within the context of the statement and with an understanding of the necessity of witness vouchers, the Court finds Zavarov was reimbursed for his expenses, rather than "paid to testify." Such payments are authorized by statute and traditionally provided to travelling witnesses. "[A]

4

witness in attendance at any court of the United States, or before a United States Magistrate Judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section." 28 U.S.C. § 1821(a)(1). "A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance." *Id.* § 1821(b). Thus, such payments were made in accordance with the statute.

Schneider cannot establish a *Brady* violation because Schneider's defense counsel had notice of the vouchers; therefore, this evidence was not suppressed. The Government attaches to its opposition brief Zavarov's "Fact Witness Vouchers," the Government's email to defense counsel explaining it was providing the standard witness fees and out-of-town witness per diem fees to Zavarov, and defense counsel's response email. Gov't Br. Attachs. A and B. Defense counsel responded, "I understand, and I don't intend to cross on it. We should be decent with people who come here voluntarily (as all of these folks have)." *Id.* Attach. B. Therefore, the Government disclosed the information and the defense counsel did not intend to use the vouchers as impeachment evidence. Furthermore, the vouchers are not favorable, exculpatory, or prejudicial to Schneider as Zavarov was treated like any other witness and the payments were reimbursements rather than payments to testify against Schneider. Schneider cannot demonstrate a reasonable probability of a different outcome under *Brady*.

Next, Schneider argues he discovered Zavarov's admitted perjury. Specifically, Schneider points to the notes of Zavarov's therapist, Buffy T. Wooten, Ph.D. Schneider cites certain portions pertaining to her initial and subsequent meetings with Zavarov. On May 10 and

17, 2012, the notes include, among other statements, the following paraphrased comments: Zavarov's attorney advised him to take the Fifth Amendment in his defense, and Zavarov states he will likely agree although initially he thought it best to tell the truth; Zavarov's attorney advised him that if he admits to lying under oath in the civil case he faces up to 10 years in prison; Zavarov intimates he will commit suicide should that occur to avoid serving that sentence; "Scared that change in testimony will upset previous conviction. False testimony?"; and Zavarov described his relationship to his abuser as loving, the abuser took care of his needs financially, emotionally, and professionally. Def. Br. Ex. B, at 8-11. Schneider argues Zavarov's alleged perjury must have been substantial because Zavarov feared 10 years imprisonment upon disclosure. Schneider also argues the Court should use the test established by the Seventh Circuit Court of Appeals in *Larrison v. United States*, 24 F.2d 82, 87-88 (7th Cir. 1928) in determining whether to grant Schneider's motion for a new trial based on the alleged perjury.

The Government contends Schneider cannot identify the alleged perjured statement. Schneider merely offers hearsay notes of Zavarov's therapist regarding Zavarov's concerns about the possible ramifications if he admits to lying under oath in the civil case. The Government also submits that the timeline of events in the civil case indicates Zavarov was concerned about providing inadequate testimony about Susan Schneider, Schneider's sister, in his first civil deposition, not testimony in the criminal case. Further, the Government argues the Court should apply the *Berry* test in considering Schneider's motion.

This Court will apply the *Berry* test in considering Schneider's motion as to the alleged perjury, as the Third Circuit has not adopted the *Larrison* test. *See United States v. Massac*, 867 F.2d 174, 178 (3d Cir. 1989) (explaining the Third Circuit did not adopt the *Larrison* rule);

*United States v. Meyers*, 484 F.2d 113, 116 (3d Cir. 1973); *Lima*, 774 F.2d at 1251 n.4. In evaluating the evidence in light of *Berry*, the Court finds the notes mentioning Zavarov's alleged perjury are immaterial, at most impeachment evidence, and would not have resulted in an acquittal.

The Court recognizes that classifying evidence as impeachment evidence does not necessarily warrant denying a motion for new trial. *See United States v. Quiles*, 618 F.3d 383, 392 (3d Cir. 2010). "A court carefully should examine whether the defendant has demonstrated the necessary exculpatory connection between the evidence and the offense or has demonstrated that the newly discovered evidence totally undermined critical exculpatory evidence." *Id.* A district court must answer the following question: "was there a strong exculpatory connection between the newly discovered evidence and the facts that were presented at trial or did the newly discovered evidence strongly demonstrate that critical evidence at the trial against the defendant was very likely to have been false?" *Id.* at 392-93.

There is not a strong exculpatory connection between the newly discovered evidence and the facts presented at trial. Schneider presents Zavarov's statements allegedly made to his therapist possibly concerning testimony he provided at either a deposition or trial. Schneider cannot state with any specificity what the perjured statement is, if it will happen in the past or will occur in the future, or in what proceeding it occurred or will occur. This is not exculpatory; rather, it is merely arguably impeachment evidence, perhaps calling his credibility into question.

The therapist's notes are also not material. In fact, the Court finds the notes provide a strong basis for denying Schneider's motion for a new trial. The therapist notes make clear that Zavarov's reports of Schneider's sexual abuse remain consistent and un-contradicted. In the intake assessment form, the therapist writes, "client enrolled in dance academy in Russia at age

10. [A]llowed to live with dance instructor since age 12 who became sexually abusive. Remained with instructor upon relocating [to] the U.S. and subject[ed] to abuse until terminated from employment in Boston, MA and introduced to wife-to-be." Def. Br. Ex. B, at 4. The notes corroborate the facts that led to Schneider's conviction. The only materiality the notes have weighs in favor of Schneider's guilt and against granting a new trial.

Zavarov also made these alleged perjury statements within the midst of the civil litigation. Schneider's defense counsel obtained the therapist's notes following a civil deposition. The civil case involves substantially different claims than the criminal case. Zavarov named Schneider, Schneider's relatives, and the Schneider family's organization, the Apogee Foundation, as defendants. Thus, discovery in the civil case does not necessarily have any bearing on the criminal charges that were brought against Schneider. During Schneider's criminal trial, the jury was able to assess Zavarov's credibility as he testified at length and with specificity about his sexual abuse and relationship with Schneider. The jury convicted Schneider of violating criminal statutes involving the transportation of a minor to engage in sexual conduct. Thus, the therapist notes of alleged perjury as to some unspecified fact, made during the course of the civil litigation, would not probably have produced an acquittal, as those statements appear to be unrelated to the sexual relationship with Schneider. The Court concludes Schneider's motion for a new trial based on the alleged perjury will be denied.

Schneider strongly asserted his argument for an evidentiary hearing in his motion for a new trial and this Court held oral argument on the need for an evidentiary hearing. Schneider cites *United States v. Dansker*, 565 F.2d 1262 (3d Cir. 1977) and *Government of Virgin Islands v. Lima*, 774 F.2d 1245 (3d Cir. 1985) in support of why this Court should hold a hearing. In *Dansker*, the Third Circuit Court of Appeals found conflicting statements made by a witness to a

prosecutor was a sufficient basis for requiring the district court to hold an evidentiary hearing for an alleged *Brady* violation, in order to determine whether exculpatory evidence related to a bribery scheme might have developed at trial. 56 F.2d at 1264. In *Lima*, the Third Circuit affirmed the district court's denial of a motion for a new trial based on newly discovered evidence without holding an evidentiary hearing, but found the better course would have been to convene a hearing. 774 F.2d at 1251-52.

A trial court does not have to hold an evidentiary hearing for every motion for new trial. *United States v. Provenzano*, 521 F. Supp. 403, 408 (D.N.J. 1981) (citing *United States v. Johnson*, 327 U.S. 106, 112 (1946); *United States v. Herman*, 614 F.2d 369, 372 (3d Cir. 1980)). Further, *Dansker* and *Lima* do not require this Court to hold an evidentiary hearing on Schneider's motion. However, this Court finds *Dansker* provides some guidance as to how a district court may determine whether it should hold an evidentiary hearing. In *Dansker*, the Third Circuit addressed the defendant's allegations, as a whole, and concluded the trial court should have had an evidentiary hearing. *Dansker*, 565 F.2d at 1264 ("Taking [defendant's] allegations as a whole, we have concluded that the trial judge erred in holding, without an evidentiary hearing, that there was no 'reasonable likelihood' that the information would have affected the verdict . . . ." (citation omitted)). The Third Circuit found, "[w]here the submission of written affidavits raises genuine issues of material fact and where, as here, the Brady claims involving [defendant] are neither frivolous nor palpably incredible, an evidentiary hearing should be conducted." *Id.* at 1264.

Schneider has not met this threshold requirement of demonstrating a genuine issue of material fact. He submits evidence that raises a mere suspicion of perjury. Schneider cannot specify what the perjured statement was or if it related to anything material in the criminal case.

In considering the therapist notes as a whole, the Court finds the notes corroborate Zavarov's testimony at trial that Schneider sexually abused him. As such, this Court does not find an evidentiary hearing is necessary.

It seems Schneider requests an evidentiary hearing so that he may explore Zavarov's statements made to his therapist in hopes to uncover misstated facts related to the criminal case. Schneider, a criminal defendant seeking a new trial, may not demand an evidentiary hearing to reexamine a witness in hopes it will reveal new evidence entitling him to a new trial. Rather, he has the burden of providing this Court with the newly discovered evidence. As indicated during oral argument, defense counsel could have taken a second deposition of Zavarov in the civil case after learning of the therapist's notes, but declined to do so. Rather, Schneider chose to move for a new criminal trial without a sufficient basis.

Additionally, this Court presided over Schneider's criminal trial, observed both Zavarov and Schneider's testimony, and is intimately familiar with the record. *See United States v. Jackson*, 427 F. App'x 109, 113 (3d Cir. 2011) ("Having presided over the trial and being intimately familiar with the record, the court was well-situated to rule on the implications of Jackson's belated submissions . . . and it did not abuse its discretion in declining to conduct an evidentiary hearing . . . ." (citation omitted)); *see also Herman*, 614 F.2d at 372. Thus, the Court is able to adequately address Schneider's motion without an evidentiary hearing.

Finally, Schneider claims he recently discovered evidence of "other contradictions" in Zavarov's testimony. Schneider indicates Zavarov testified at his deposition that his relationship with Schneider was, at least from age 16 on, loving, consensual, and non-coercive, and also that the movie he viewed with Schneider in his Moscow apartment was in Russian rather than English. Schneider argues these statements are at odds with Zavarov's testimony during the

criminal trial and during his "victim impact statement" at sentencing.  Schneider also argues Zavarov received a raise every year as a professional dancer, contrary to his statement at sentencing.

The Government argues Zavarov's testimony that he felt positive and loving towards Schneider was already elicited at trial, thus it is cumulative.  Evidence of Zavarov's consent, moreover, would not have resulted in an acquittal, because consent is not an element of Schneider's offense, nor is it an affirmative defense.  Furthermore, the fact the movie was in Russian and not in English is not evidence of whether or not Schneider committed the crime for which he was convicted.

The Court agrees with the Government and finds this "contradictory testimony" is merely impeachment evidence which does not exculpate Schneider, is immaterial, and would not have probably produced an acquittal.  Thus, the Court will deny Schneider's motion for a new trial based on these alleged contradictory statements.

An appropriate order follows.

BY THE COURT:


   /s/ Juan R. Sánchez
Juan R. Sánchez, J.